1  CANDIS WATSON BOWLES (CA SBN 198860)
2  MELINDA BIRD (CA SBN 102236)
   DISABILITY RIGHTS CALIFORNIA
   350 South Bixel Street, Suite 290
3  Los Angeles, CA 90017
   Telephone: 213.213.8000
4  Facsimile:  213.213.8001

5  ROBERT S. STERN (CA SBN 68240)
   RStern@mofo.com
6  KELSEY M. STRICKER (CA SBN 300955)
   KStricker@mofo.com
7  MAYA L. INGRAM (CA SBN 285009)
   MIngram@mofo.com
8  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
9  Los Angeles, California  90017-3543
   Telephone: 213.892.5200
10 Facsimile:  213.892.5454

11 Attorneys for Plaintiffs
   *(Additional Counsel Listed on Next Page)*
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16 SAM DOE by and through his *guardian*      Case No. 2:16-CV-00984
   *ad litem* L.R., DEBORAH DOE by and
17 through her *guardian ad litem* S.H,        **CLASS ACTION COMPLAINT**
   TANYA DOE by and through her
18 *guardian ad litem* F.H., ERIC DOE by
   and through his *guardian ad litem* G.B.,
19 WALTER DOE by and through his
   *guardian ad litem* M.F., EVAN DOE by
20 and through his *guardian ad litem* C.M.;
   and on behalf of themselves and other
21 similarly situated students,,

22              Plaintiffs,

23       v.

24 PASADENA UNIFIED SCHOOL
   DISTRICT and BRIAN MCDONALD
25 in his official capacity as Superintendent
   of Pasadena Unified School District,
26
                Defendants.
27

28

CLASS ACTION COMPLAINT

1   CANDIS WATSON BOWLES (CA SBN 198860)
2   MELINDA BIRD (CA SBN 102236)
    DISABILITY RIGHTS CALIFORNIA
    350 South Bixel Street, Suite 290
3   Los Angeles, CA 90017
    Telephone: 213.213.8000
4   Facsimile: 213.213.8001

5   ROBERT S. STERN (CA SBN 68240)
    RStern@mofo.com
6   KELSEY M. STRICKER (CA SBN 300955)
    KStricker@mofo.com
7   MAYA L. INGRAM (CA SBN 285009)
    MIngram@mofo.com
8   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
9   Los Angeles, California 90017-3543
    Telephone: 213.892.5200
10  Facsimile: 213.892.5454

11  Attorneys for Plaintiffs
    *(Additional Counsel Listed on Next Page)*
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

| 16 | SAM DOE by and through his *guardian ad litem* L.R., DEBORAH DOE by and through her *guardian ad litem* S.H, TANYA DOE by and through her *guardian ad litem* F.H., ERIC DOE by and through his *guardian ad litem* G.B., WALTER DOE by and through his *guardian ad litem* M.F., EVAN DOE by and through his *guardian ad litem* C.M.; and on behalf of themselves and other similarly situated students,, | Case No. |
|---|---|---|
| | | **CLASS ACTION COMPLAINT** |
| | Plaintiffs, | |
| | v. | |
| | PASADENA UNIFIED SCHOOL DISTRICT and BRIAN MCDONALD in his official capacity as Superintendent of Pasadena Unified School District, | |
| | Defendants. | |

IRA A. BURNIM, *Pro Hac Vice* Application Pending
LEWIS BOSSING (DC SBN 227492)
JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW
1101 15th Street NW, Suite 1212
Washington, DC 20005
Telephone:   202.467.5730
Facsimile:    202.223.0409

JAMES PREIS (CA SBN 82690)
NISHANTHI KURUKULASURIYA, (CA SBN 302701)
MENTAL HEALTH ADVOCACY SERVICES, INC.
3255 Wilshire Boulevard, Suite 902
Los Angeles, California 90010
Telephone:   213.389.2077
Facsimile:    213.389.2595

CLASS ACTION COMPLAINT

# INTRODUCTION

1.     Defendants Pasadena Unified School District ("Pasadena USD" or "District") and Brian McDonald, the Superintendent of Pasadena USD, operate a public school system that discriminates against students with behavior-related disabilities.  Pasadena USD sends students with these disabilities and only such students to a segregated school site, Focus Point Academy ("Focus Point"), where they are consigned to an inferior education, denied access to electives and extracurricular activities, isolated from their non-disabled peers, deprived of the benefits of normal socialization, and, in general, suffer the same harms as any other victims of segregation.  This practice violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, along with state disability rights laws.  Consequently, this court has jurisdiction over this action under Title II of the ADA, 42 U.S.C. §§ 12131-12133, and 28 U.S.C. § 1331.

2.     Although Pasadena USD considers Focus Point a "therapeutic setting," it is far from being therapeutic.  Placement at Focus Point is more likely to exacerbate a child's mental health condition than improve it.  Academic expectations are low, and students make little academic progress there.  Rather than fostering learning, the emphasis at Focus Point is on behavior control using drastic methods including dangerous physical restraints, inappropriate forced isolation, threatened and repeated arrests, and suspensions for minor offenses.

3.     Tragically, most if not all of the children placed at Focus Point do not need to be there. These are children of great promise. They could be educated successfully in classrooms with students without disabilities in Pasadena USD's neighborhood schools with reasonable modification of Pasadena USD's programs and services, namely, the provision of school-based behavioral services there.

4.     The ADA imposes on Defendants the obligation to reasonably modify Pasadena USD's programs and services to avoid discrimination.  Providing children with a behavior-related disability access to school-based behavioral services—to

1

1   afford them an equal education and to enable them to be educated in neighborhood

2   schools—is a reasonable modification required by the ADA.

3       5.      The ADA mandates that Defendants (i) provide children with a

4   behavior-related disability educational opportunities that are equal to and as

5   effective as those provided other students, and (ii) serve students with a behavior-

6   related disability in the most integrated setting appropriate to their needs, that is, the

7   setting in which they interact with their peers without a disability to the fullest

8   extent possible.  By warehousing students with behavior-related disabilities at

9   Focus Point, Defendants are violating both of the ADA's legal mandates.

10      6.      Plaintiffs seek injunctive and declaratory relief for ongoing violations

11  of the ADA, including an order that Defendants provide the named Plaintiffs and

12  the Plaintiff class with school-based behavioral services in neighborhood schools to

13  afford them an equal education and enable them to be educated in neighborhood

14  schools with their peers without disabilities.

15                          **JURISDICTION AND VENUE**

16      7.      This Court has jurisdiction over this action under Title II of the ADA,

17  42 U.S.C. §§ 12131-12133, and 28 U.S.C. § 1331.  Declaratory relief is available

18  pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

19  Injunctive relief is authorized by 28 U.S.C. § 2202 and Rule 65 of the Federal Rules

20  of Civil Procedure.

21      8.      Plaintiffs' claims for violations of California state law concern the

22  same actions and omissions that form the basis of their claims under federal law

23  because they are all part of the same case or controversy.  This court has

24  supplemental jurisdiction over those state law claims pursuant to 28 U.S.C. § 1367,

25  California Government Code § 11139, and California Civil Code § 54.3.

26      9.      Venue is proper in the Central District of California pursuant to 28

27  U.S.C. § 1391(b) (2), because all of the acts and omissions giving rise to these

28  claims occurred in the Central District.

2

CLASS ACTION COMPLAINT

**PARTIES**

**A.    Plaintiffs**

10.    The named Plaintiffs, described in more detail in paragraphs 68 through 110 below, all reside in Pasadena and have behavior-related disabilities that impair their ability to learn, read, concentrate, think, and communicate.  All are either students at Focus Point or are at serious risk of reassignment to it because Defendants are not providing them the school-based behavioral services they need to be educated in their neighborhood schools.

11.    In each case, the student's guardian *ad litem* brings this action on the student's behalf.

12.    All the named Plaintiffs in this matter are minors and have requested leave to proceed in this matter under fictitious names.

**B.    Defendants**

13.    Defendant Pasadena Unified School District ("Pasadena USD") operates and funds public school programs, services, and activities.  Pasadena USD is a public entity as defined by Title II of the ADA.  42 U.S.C. § 12131.  Pasadena USD's offices are located at 351 S. Hudson Ave., Pasadena, California 91101.

14.    Defendant Brian McDonald is sued in his official capacity as the Superintendent of Pasadena USD.  Defendant McDonald is responsible for the daily operations of Pasadena USD, including its programs and services for students with a disability.

**CLASS ACTION ALLEGATIONS**

15.    Pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, named Plaintiffs bring this suit as a class action on their own behalf and on behalf of the following class:  All Pasadena USD students who, now or in the future, are placed at Focus Point or are at serious risk of being placed at Focus Point.  A student is at "serious risk" of being placed at Focus Point if the student (a) is being considered for placement at Focus Point, or (b) has recently been

3

CLASS ACTION COMPLAINT

1    transitioned from Focus Point to a neighborhood school and is having behavior

2    problems at that school.

3           16.    The class is so numerous that joinder of all members is impracticable.

4    Pasadena USD has reported that, during the 2014-2015 school year, over 80

5    students with a behavior-related disability were enrolled at Focus Point.  Joinder is

6    also impracticable because Pasadena USD routinely considers new students for

7    enrollment at Focus Point, and enrolls new children at Focus Point on an ongoing

8    basis.  In addition, most class members lack the means to maintain individual

9    actions.

10          17.    There are questions of law and fact common to the class, including

11   whether Defendants are discriminating against named Plaintiffs and those similarly

12   situated in violation of the ADA, California Government Code § 11135, and the

13   California Disabled Persons Act, California Civil Code § 54 *et seq*., by, among

14   other actions, employing policies and practices that:

15                 a.    Deny named Plaintiffs and members of the class an opportunity

16                       to participate in and benefit from educational services that are

17                       equal to that afforded students without a behavior-related

18                       disability;

19                 b.    Deny named Plaintiffs and members of the class educational

20                       services that are as effective in affording equal opportunity to

21                       obtain the same result, gain the same benefit, or reach the same

22                       level of achievement as that provided students without a

23                       behavior-related disability;

24                 c.    Fail to provide named Plaintiffs and members of the class

25                       educational programs and services in the most integrated setting

26                       appropriate, by unnecessarily segregating them at Focus Point;

27                 d.    Fail to reasonably modify Pasadena USD's programs and

28                       services as needed to avoid discrimination; and

4

e.     Utilize methods of administration that have the effect of defeating or substantially impairing the accomplishment of the objectives of Defendants' educational programs with respect to students with a behavior-related disability.

18.     The named Plaintiffs' claims are typical of the claims of the class.

19.     The named Plaintiffs will fairly and adequately protect the interests of the class. The named Plaintiffs will vigorously represent the interests of the unnamed class members, and all members of the proposed class will benefit from Plaintiffs' efforts. There is no conflict between the interests of the named Plaintiffs and the proposed class. Furthermore, Plaintiffs have retained competent counsel experienced in educational and class action litigation.

20.     Defendants have acted and continue to act on grounds generally applicable to the Plaintiff class, thereby making appropriate injunctive and declaratory relief with respect to the class as a whole.

## THE AMERICANS WITH DISABILITIES ACT

21.     Congress enacted the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and to provide strong and enforceable standards for addressing such discrimination. 42 U.S.C. § 12101(b)(1), (2).

22.     The ADA is based on Congress's findings that, inter alia, (i) "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem," 42 U.S.C. § 12101(a)(2), and (ii) "discrimination against individuals with disabilities persists in such critical areas as . . . education," 42 U.S.C. § 12101(a)(3); and (iii) "individuals with disabilities continually encounter various forms of discrimination, including . . . segregation, and relegation to lesser services,

CLASS ACTION COMPLAINT

1  programs, activities, benefits, jobs, or other opportunities." 42 U.S.C.

2  § 12101(a)(5).

3        23.    The ADA defines a "disability" as "a physical or mental impairment

4  that substantially limits one or more major life activities."  42 U.S.C.

5  § 12102(1)(A).  The ADA provides that for purposes of this definition, "major life

6  activities" include but are not limited to "learning, reading, concentrating, thinking,

7  [and] communicating." 42 U.S.C. § 12102(2)(A).

8        24.    The ADA defines "qualified individual with a disability" as an

9  "individual with a disability who, with or without reasonable modifications to rules,

10  policies, or practices, . . . meets the essential eligibility requirements for the receipt

11  of services or the participation in programs or activities provided by a public

12  entity."  42 U.S.C. § 12131(2).

13        25.    As school-age residents of Pasadena, all named Plaintiffs are eligible

14  for educational services provided by the Pasadena USD, and, by virtue of their

15  disabilities, all are qualified for the protections of the ADA.

16        26.    Title II of the ADA mandates that "no qualified individual with a

17  disability shall, by reason of such disability, be excluded from participation in or be

18  denied the benefits of the services, programs, or activities of a public entity, or be

19  subjected to discrimination by any such entity."  42 U.S.C. § 12132; *see also* 28

20  C.F.R. § 35.130.

21        27.    Title II of the ADA applies to all of the activities of public entities,

22  including providing education. Each Defendant is either a public entity subject to

23  Title II of the ADA or an official responsible for supervising the operations of a

24  public entity subject to Title II of the ADA.  42 U.S.C. § 12131(1).

25        28.    The ADA directs the Attorney General to promulgate regulations

26  enforcing Title II of the ADA and provides guidance on their content.  The

27  regulations promulgated by the Attorney General require public entities to "make

28

6

1   reasonable modifications" to their programs and services "when the modifications
2   are necessary to avoid discrimination." 28 C.F.R. § 35.130(b)(7).

3       29.    The regulations also specify that it is unlawful discrimination for a
4   public entity to:

5           a.    "Afford a qualified individual with a disability an opportunity to
6                 participate in or benefit from the aid, benefit, or service that is
7                 not equal to that afforded others," 28 C.F.R. § 35.130(b)(1)(ii);

8           b.    "Provide a qualified individual with a disability with an aid,
9                 benefit, or service that is not as effective in affording equal
10                opportunity to obtain the same result, to gain the same benefit,
11                or to reach the same level of achievement as that provided to
12                others," 28 C.F.R. § 35.130(b)(1)(iii);

13          c.    Fail to "administer services, programs, and activities in the most
14                integrated setting appropriate to the needs of qualified
15                individuals with disabilities," 28 C.F.R. § 35.130(d), which the
16                Attorney General has defined as "a setting that enables
17                individuals with disabilities to interact with non-disabled
18                persons to the fullest extent possible," 28 C.F.R. pt. 35, App. A,
19                p. 450; or

20          d.    "[U]tilize criteria or methods of administration … [t]hat have
21                the purpose or effect of defeating or substantially impairing
22                accomplishment of the objectives of the public entity's program
23                with respect to individuals with disabilities," 28 C.F.R.
24                § 35.130(b)(3)(ii).

25      30.    The Supreme Court has held that discrimination prohibited under Title
26   II of the ADA includes the needless isolation or segregation of persons with
27   disabilities.  *Olmstead v. L.C., ex rel. Zimring*, 527 U.S. 581, 600 (1999)
28   ("unjustified institutional isolation of persons with disabilities is a form of

7

discrimination"); *see also* 2011 Statement of the US Department of Justice on Enforcement of the Integration Mandate of Title II of the ADA and *Olmstead*, June 22, 2011.

31.     As the Supreme Court has held in a different context:  "We conclude that in the field of public education the doctrine of 'separate but equal' has no place.  Separate educational facilities are inherently unequal."  *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 495 (1954).

32.     Unjustified isolation of disabled persons who, with reasonable accommodations, could participate in an integrated setting is unlawful discrimination because (1) segregation "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life," and (2) segregation "severely diminishes life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment."  *Olmstead*, 527 U.S. at 600-601.

33.     Congress specifically provided for a private right of action to enforce Title II.  *See* 42 U.S.C. § 12133 (incorporating the remedies and enforcement procedures available under Title VI of the Civil Rights Act, which includes a private right of action).

## STATEMENT OF FACTS

**A.     The Pasadena Unified School District**

34.     Defendant Pasadena USD is a unified school district that is responsible for the schools in the cities of Pasadena, Sierra Madre and the unincorporated community of Altadena.  It has approximately 26 neighborhood schools in which students with and without disabilities are enrolled.  Enrollment at Focus Point is limited to students with behavior-related disabilities.

35.     Defendants have not reasonably modified Pasadena USD neighborhood schools to provide school-based behavioral services for children with a behavior-related disability.  The essential components of school-based behavioral

services are: (a) a comprehensive assessment, including determination of the purpose and triggers for the child's behavior; (b) an individualized school-based intervention plan that relies on positive support, social skills training, a care coordinator, and adjustments to curriculum or schedule as needed; (c) training for school staff and parents in implementing the plan; and (d) coordination with non-school providers involved with the child (collectively, "school-based behavioral services").

36.     There is a professional consensus that such school-based behavioral services are necessary to afford children like named Plaintiffs and Plaintiff class members an equal opportunity to advance academically and graduate and the opportunity to be educated in neighborhood schools along with their non-disabled peers.

37.     Instead of providing school-based behavioral services in neighborhood schools, Defendants routinely inform students who need them, and their caregivers, that they are only available at Focus Point.  The District then transfers these students to Focus Point.

38.     In addition, students at Pasadena USD schools other than Focus Point have access to a rich array of educational and extracurricular activities.  For high school students, this includes a Regional Occupation Program that offers training in high school for careers in health care, entertainment, computer science and video game development and television and video production classes taught through the District's own cable access station.  Pasadena USD also offers ROTC, including Naval Cadet training at one high school.  Plaintiffs do not have these opportunities at Focus Point.

39.     For example, John Muir High School is the neighborhood school that named Plaintiffs Sam Doe and Walter Doe would attend if they were not placed at Focus Point.  The Muir campus has a swimming pool, separate sports fields for soccer, baseball and football, an auditorium, little theater, business academy, a large

CLASS ACTION COMPLAINT

library and computer lab, and a building dedicated to auto shop, art rooms and a career training program.  Muir has more than 17 clubs and sports activities for students, such as robotics, band, and the school newspaper.  Its school literary magazine is supported by the local Rotary club and publishes student poetry, artwork, and fiction.  Muir Ranch is an on-site school garden staffed by student farmers that partners with local restaurants, and sells farm boxes and floral bouquets to fund paid student internships.  Neither Sam nor Walter can participate in any of these programs and activities while enrolled at Focus Point.

40.     Similarly, Sierra Madre Middle School is the neighborhood school that named Plaintiff Deborah Doe would attend if she had not been placed at Focus Point.  Sierra Madre is a comprehensive campus with classes not only in traditional academic subjects, but also vocal training, drama and robotics.  Every 8th grade student at Sierra Madre Middle School has the opportunity to spend a week at a science camp on Catalina Island.  Students at Sierra Madre can participate in an annual talent show, art contest, school dances including a winter formal, and school plays such as "the Music Man."  One school group organizes volunteer opportunities for students, such as food drives, spirit day, and neighborhood improvement.  Student athletics include flag football, soccer, and basketball. Deborah cannot participate in any of these activities at Focus Point.

**B.     Focus Point – Pasadena USD's Segregated School**

41.     Focus Point serves first through twelfth grade students (up to age 21) who have behavior-related disabilities.  During the 2014-2015 school year, approximately 82 students attended Focus Point, according to Focus Point enrollment logs.

42.     The students at Focus Point have many talents and strengths.  They have the same aspirations as other Pasadena USD students.  They have hobbies; enjoy sports, music, and art; and would like to participate in extracurricular activities.  After they graduate from high school, they would like to get good jobs.

1    Many would like to go to college.  Most have supportive families, guardians, or

2    caregivers.

3          43.    The students at Focus Point could be successfully educated in

4    neighborhood schools if provided school-based behavioral services.

5          44.    By removing them from neighborhood schools, PUSD needlessly

6    segregates these students from their peers without disabilities

7          45.    The isolation of students at Focus Point severely diminishes their

8    educational opportunity.  They are denied the same opportunity to learn and

9    graduate that is afforded their peers.

10         46.    Their isolation at Focus Point also denies the students opportunities to

11   develop appropriate social skills, including through interacting with their peers

12   without disabilities.

13         47.    Moreover, the students at Focus Point are stigmatized as a result of the

14   unwarranted assumption that they are incapable or unworthy of attending their

15   neighborhood schools with their non-disabled peers.

16         48.    Once transferred to Focus Point, many students remain there for years

17   even though part of Focus Point's purported mission is to transition students back

18   to neighborhood schools.

19         49.    The few Focus Point students whom Defendants do permit to

20   transition to a neighborhood school from Focus Point are at risk of returning to

21   Focus Point because Defendants fail to provide them the school-based behavioral

22   services they need to be successful in a neighborhood school.  If a former student

23   has a crisis that requires additional support, Defendants send the student back to

24   Focus Point, instead of providing the school-based behavioral services the student

25   needs.

26         50.    Pasadena USD often tells parents, guardians, or other educational

27   rights holders that students with behavior-related disabilities must be placed at

28   Focus Point or they will fail educationally.

CLASS ACTION COMPLAINT

la-1310699

*Behavior Management*

51. School-based behavioral services are largely unavailable to children at Focus Point, which does not use effective and professionally accepted practices for managing and improving the behavior of its students. Focus Point uses the same ineffective program for managing and improving the behavior of each of its students, consisting primarily of a points system and the use of restraint and seclusion.

52. Because they do not receive school-based behavioral services, Focus Point students at times engage in disruptive behavior. Although District mental health staff and personnel from Pacific Clinics, a private mental health services provider, are on Focus Point's campus, deescalating students when they engage in disruptive behavior is not part of their responsibilities. Rather, this is left to Focus Point's inadequately trained school personnel, who often resort to harsh and counterproductive responses, including physical restraints, unnecessary forced isolation, and inappropriate arrests and suspensions for minor offenses. These methods interfere with students' education and their ability to learn, and tend to exacerbate their mental health symptoms.

53. Focus Point uses a point system for earning rewards or to qualify for transfer to another school. A student must earn a certain number of points each day to be considered for transfer to another school. If the student does not earn enough points each day over a 30-day period, the calendar is reset to day one.

54. The point system used by Focus Point is not an appropriate intervention for students with behavior-related disabilities, including because it is not individualized to students' strengths and needs. It is also implemented arbitrarily. A behavior that on one day is acceptable can result in points being withheld on another day. The inconsistent application of the point system contributes to the environment at Focus Point being unpredictable and unstable.

CLASS ACTION COMPLAINT

55.     Focus Point staff inappropriately rely on restraint and seclusion to address problematic behaviors.  Seclusion takes place in an isolation room, which staff and students call the "boring room."  The "boring room" has no windows and the walls are padded.  Focus Point staff frequently use restraints when they place students in the boring room.

### *Academics*

56.     At Focus Point, academic instruction is "dumbed down" and secondary to behavioral control based on the unwarranted assumption that students at Focus Point are incapable of achieving academically at the same level as their peers without a disability.

57.     Moreover, students from a range of grades are placed in the same classroom, making instruction challenging.  Students from 6th-8th grade are mixed together in middle school classrooms, students from 9th-12th grade are mixed together in Focus Point's high school classrooms.  At Focus Point teachers of multi-grade classrooms typically employ one-size-fits-all lesson plans and do not differentiate instruction based on grade level or ability.

58.     Focus Point requires many students to leave the school at 1:00 p.m. to participate in a non-academic day treatment program at Pacific Clinics from 1:30 to 5:30 p.m.  Some Focus Point students must attend this program five days per week, others attend two days per week.  These students receive far less instructional time per week than other Pasadena USD students, who attend school until 3:00 p.m. each day.

59.     Focus Point students are not taught the same curriculum provided to their non-disabled peers, or even a comparable curriculum.  Focus Point students do not take tests that are the same or comparable to those tests given to their non-disabled peers.  They are also not given homework that is the same or comparable to that given non-disabled peers.

13

CLASS ACTION COMPLAINT

*Other Unequal Educational Opportunities*

60.     Focus Point has no extracurricular activities or clubs, and does not offer the elective classes available at Pasadena USD neighborhood schools.  Middle and high school students at Focus Point cannot take physical education classes.  There are no intermural athletics or student sports teams.  Students cannot play interscholastic sports against other schools within Pasadena USD or inter-district sports against teams from other school districts.  There is no auditorium, no music or band classes or clubs, and no drama or dance program.  There are no school dances.  There are no vocational programs nor is there a school garden.  There is no ROTC.  There are no classes in film, video, visual and fine arts, or graphic design.  There is no student government.  Students do not have the opportunity to participate in Pasadena USD-sponsored college, military, and job informational and recruitment activities available to students in the neighborhood high schools.  Students do not even have access to a lunchroom or cafeteria and must eat lunch in their small classrooms.

61.     Focus Point requires students who want to return to an integrated campus to participate first in "dual enrollment," a process that is poorly planned and executed, deprives students of valuable instructional time, and hinders their social integration into the new school.  Dual enrollment requires the student to attend one or two classes at a neighborhood school, and then be transported by bus to Focus Point, where they spend the remainder of the day.  Dual enrollment is often initiated mid-year, so the Focus Point students start off behind other students in their new classes at the neighborhood school.  Teachers at the neighborhood school are typically not involved in planning the students' transition, nor are they adequately trained or supported to respond to disruptive behavior that may occur at the new school.

62.     Even after Focus Point staff identifies a student as eligible to transfer to a neighborhood school, District staff may wait months or even years before

CLASS ACTION COMPLAINT

1   taking steps to return the student to a neighborhood school.  No explanation is
2   given for the delay.

3   **C.    The Named Plaintiffs**

4                    ***Allegations Common to All Named Plaintiffs***

5          63.    All of the named Plaintiffs attend Focus Point or are at serious risk of
6   attending Focus Point because of Defendants' policy and practice of failing to
7   provide school-based behavioral services at neighborhood schools.

8          64.    While at Focus Point, each of the named Plaintiffs was denied equal
9   educational opportunity and the opportunity to be educated in the most integrated
10  setting appropriate to their needs.  Each made little or no educational progress, and
11  their behavior and mental health status deteriorated.

12         65.    Each of the named Plaintiffs wants to and could be educated in a
13  neighborhood school if Pasadena USD would reasonably modify its programs and
14  services by providing school-based behavioral services to students with behavior-
15  related disabilities.  Each of their guardians *ad litem* wants them to attend a
16  neighborhood school, which would be the most integrated setting appropriate for
17  them.

18         66.    Defendants placed all of the named Plaintiffs at Focus Point on the
19  grounds that they could not be educated in a neighborhood school because they
20  required services that can only be provided at Focus Point.  However, the services
21  the named Plaintiffs required could reasonably be provided to the named Plaintiffs
22  at a neighborhood school.

23         67.    Each of the named Plaintiffs has suffered serious harms as a result of
24  his or her placement at Focus Point.

25                         ***Plaintiff Sam Doe***

26         68.    Plaintiff Sam Doe is 14 years old.  He is a student in the ninth grade at
27  Focus Point, which he has attended since starting fifth grade in 2011.  He lives in
28  Pasadena with his mother, L.R., who is his guardian *ad litem* and brings this action

la-1310699                                                              CLASS ACTION COMPLAINT

on his behalf.  He is interested in learning about computers and designing video games, and likes to entertain people and make them laugh.

69.    Sam has a behavior-related disability that impairs his ability to learn, read, concentrate, think, communicate, or develop and maintain relationships.  He has been diagnosed with attention deficit disorder (ADD) and has problems processing new information.  He sometimes is verbally defiant to staff and teachers, is aggressive with peers, leaves campus without permission, and is late to or absent from school.

70.    He attended neighborhood schools in Pasadena USD from first through fifth grade, before the District transferred him to Focus Point.  During this time, the District did not provide school-based behavioral services to Sam, and he has continued to have behavior issues in school.

71.    Sam spent sixth grade at Focus Point.  During his seventh grade year, Sam was permitted to dual enroll at a neighborhood middle school in the morning, returning to Focus Point for the afternoon.  The District did not prepare Sam to attend his neighborhood school, and did not provide Sam with school-based behavioral services at that school.  After several months, the District ended Sam's dual enrollment, and he returned full-time to Focus Point.

72.    Sam is now in ninth grade at Focus Point.  He has made virtually no academic progress over the last four years.  Each year that he is at Focus Point, he falls further behind his non-disabled peers.

73.    Focus Point has not been successful in improving Sam's behavior, School staff frequently send Sam to the "boring room" as a punishment for disruptive behavior.  In one instance he was sent to the "boring room" at the end of the day and was required to return the next day to finish his punishment.

74.    Sam has told his counselors that he often "acts out" because he has given up hope of ever being able to leave Focus Point and returning to a neighborhood school.

CLASS ACTION COMPLAINT

75.     With school-based behavioral services, Sam could be educated in a Pasadena USD neighborhood school.

### *Plaintiff Deborah Doe*

76.     Plaintiff Deborah Doe is 11 years old and is in the sixth grade at Focus Point.  She has attended Focus Point since February 2012 when she was in the third grade, with a brief break in 2013 when she was temporarily placed outside the school district.  She is in foster care and lives at a group foster home in Pasadena.  Her aunt, S.H., is her guardian *ad litem* and brings this action on her behalf.  She enjoys dancing, socializing, playing sports and interacting with classmates whether it is on the athletic fields or in the classroom.  She is interested in dance, drama, and athletics, and would like to work on a school yearbook.

77.     Deborah has a behavior-related disability that impairs her ability to learn, concentrate, think, communicate, or develop and maintain relationships.  She has problems with visual processing and controlling her temper and emotions.  She has been in foster care since she was very young and experienced trauma at an early age, which has impaired her cognitive and emotional functioning.  Her behavioral issues include departures from school and class without permission, immature social relations, physical and verbal aggression to peers, and defiance toward staff.  She has difficulty adjusting to change and is easily frustrated when faced with new or challenging tasks.

78.     When she was in second grade and attended a neighborhood school, Deborah was reading at grade level and was close to grade level in other areas.  Focus Point has failed to help her to make progress academically.  She wants to attend a Pasadena USD neighborhood school.

79.     The District placed Deborah in dual enrollment at a neighborhood middle school for fifth grade.  However, Deborah was not provided with school-based behavioral services at the middle school, and she was not successful in dual enrollment.  She returned to full-time enrollment at Focus Point in early 2015.

CLASS ACTION COMPLAINT

80.     The District has again placed Deborah in dual enrollment at a neighborhood middle school in January 2016.  This transition has not been well planned; Deborah only attends one class at the middle school—physical education—and loses valuable instructional time riding the school bus back and forth between Focus Point and the middle school each day.  Because she does not receive school-based behavioral services, and she continues to have disability-related behaviors, she is at serious risk of returning to Focus Point.  The District does not have a plan for responding to her disability-related behaviors other than by returning Deborah to Focus Point.

81.     At Focus Point, when Deborah has become defiant or aggressive with peers, she has been restrained and sent to the "boring room" as punishment.

82.     With school-based behavioral services, Deborah could be educated in a Pasadena USD neighborhood school.

### *Plaintiff Tanya Doe*

83.     Plaintiff Tanya Doe is 12 years old and in the sixth grade.  She attended Focus Point from June 2013, when she was finishing the third grade, to October 23, 2015.  Tanya is in foster care and lives in a group home in Pasadena.  Her court-appointed special advocate, F.H., is her *guardian ad litem* and brings this action on her behalf.  Tanya enjoys drawing and arts and crafts projects that involve working with her hands and putting things together.  She likes music.  She is articulate, with a strong ability to communicate verbally.  She has clear plans for the future:  she wants to live in a foster family and have a dog, and to spend more time with her siblings, who are also in foster care.

84.     Tanya has a behavior-related disability that impairs her ability to learn, read, concentrate, think, communicate, or develop and maintain relationships.  She has a history of trauma and loss as a result of frequent moves while in foster care and being separated from her four siblings.  Her behaviors have included leaving classes without permission and walking away from campus, physical and verbal

CLASS ACTION COMPLAINT

1  aggression toward staff, and tantrums in class.  She has difficulty controlling her

2  anger and sadness when she is teased, and has difficulty completing school work.

3  85.  Tanya attended neighborhood schools from first through third grade.

4  In January 2013, Tanya moved to the group home where she currently lives and

5  enrolled in a Pasadena USD neighborhood elementary school, where she had

6  serious behavior issues.  The District did not provide her with school-based

7  behavioral services at her neighborhood school.  Instead, the District reduced her

8  schedule to a half day.

9  86.  In June 2013, the District transferred Tanya to Focus Point.  At Focus

10  Point, Tanya has had virtually no opportunity to learn or practice social skills.  Staff

11  has tried to control her behavior through use of dangerous restraints and placement

12  in the "boring room."  In one instance, Tanya received a black eye while staff

13  restrained her.  She feels that people at Focus Point do not listen to her.  Tanya

14  made almost no academic progress while at Focus Point.

15  87.  Through advocacy by Tanya's guardian *ad litem*, Tanya finally was

16  able to transfer to McKinley Middle School on October 23, 2015, after attending

17  fourth and fifth grade at Focus Point.

18  88.  Tanya is at serious risk of returning to Focus Point.  The District did

19  not plan for her transition, and she has not been provided school-based behavioral

20  services at McKinley.  As a result, she is having behavior issues at the school.

21  Recently she walked away from the school campus.  She was found by group home

22  staff walking around downtown Pasadena.  Defendants do not have a plan for

23  responding to her behavior issues at school other than by returning Tanya to Focus

24  Point.

25  89.  With school-based behavioral services, Tanya could be educated in a

26  Pasadena USD neighborhood school.

27

28

19

CLASS ACTION COMPLAINT

### *Plaintiff Eric Doe*

90.     Plaintiff Eric Doe is 11 years old and in the sixth grade at a neighborhood middle school in Pasadena USD.  He attended fifth grade at Focus Point.  He lives in Pasadena with his great aunt, G.B., who is his *guardian ad litem* and brings this action on his behalf.  Eric is an intelligent and precocious young man.  He enjoys learning, reading, and riding his scooter, but his passion is basketball.  He is interested in working in the sports industry or in television as a newscaster.

91.     Eric has a behavior-related disability that impairs his ability to learn, read, concentrate, think, communicate, or develop and maintain relationships.  He has been diagnosed with Attention Deficit and Hyperactivity Disorder (ADHD), mood disorder and anxiety disorder among other conditions.  He experienced early trauma in his life, and was separated from his siblings.  His behaviors include defiance, difficulty controlling his anger, and leaving class when he wants to avoid a task.

92.     Despite being intellectually capable, Eric has struggled academically because of his disability, particularly with writing.  His frustration with writing often leads to behavior outbursts.  On occasion, Eric has fought with peers over disagreements or when provoked.  Rather than deescalating his behavior or using positive behavior interventions, Focus Point staff restrained Eric and took him to "the boring room."

93.     As a result of Eric's great-aunt and guardian *ad litem*'s persistent advocacy, Eric was allowed to begin dual enrollment, with two class periods at the District's Marshall Fundamental School and his other classes at Focus Point.  Soon after, Eric began full-time enrollment at Marshall, where he has joined the basketball team.  He plays basketball at recess and participates in P.E. classes.

94.     Eric continues to have disability-related behaviors.  He is not receiving school-based behavioral services and is at serious risk of returning to Focus Point.

CLASS ACTION COMPLAINT

1   Defendants do not have a plan for responding to his disability-related behaviors
2   other than by returning Eric to Focus Point.

3       95.    With school-based behavioral services, Eric could be educated in a
4   Pasadena USD neighborhood school.

5                          ***Plaintiff Walter Doe***

6       96.    Plaintiff Walter Doe is seventeen years old and in the twelfth grade at
7   Focus Point.  He lives with his parents in Pasadena.  His mother, M.F., is his
8   guardian *ad litem* and brings this action on his behalf.  Walter is very charismatic.
9   He is also thoughtful, creative and technologically savvy.  He frequently uses his
10  cell phone to make videos, and is interested in learning about video production.  He
11  aspires to be a stage and concert lighting technician.

12      97.    Walter has a behavior-related disability that impairs his ability to learn,
13  read, concentrate, think, communicate, or develop and maintain relationships.  He
14  has been diagnosed with depression, a generalized anxiety disorder, and a specific
15  learning disability, among other conditions.  He has engaged in self-injurious and
16  disruptive behavior.  He has had difficulty completing work, is frequently absent or
17  tardy without excuse, and has been defiant toward teaching staff.

18      98.    Walter has struggled academically since kindergarten as a result of his
19  disability.  The District never provided him with school-based behavioral services.
20  After repeated problems in neighborhood schools, it transferred Walter to Focus
21  Point for eleventh grade.

22      99.    After two years at Focus Point, Walter's behaviors have not improved.
23  He continues to be sent to the "boring room" when he is defiant with staff.  At
24  times, being sent there has caused his behavior to escalate.  Walter is frustrated and
25  angry about being unable to transfer from Focus Point to a neighborhood high
26  school.

27      100.   With school-based behavioral services, Walter could be educated in a
28  Pasadena USD neighborhood school.

21

la-1310699

***Plaintiff Evan Doe***

101.   Plaintiff Evan Doe is 14 years old and in the ninth grade at Focus Point, which he has attended since May 2015.  He lives with his mother, C.M., who is his guardian *ad litem* and brings this action on his behalf.  Evan is close with his family and siblings, and loves sports and athletics.  When he attended a neighborhood school, he enjoyed physical education and sports, including playing soccer and basketball at lunch with other students.  This helped him to focus in his classes.

102.   Evan has a behavior-related disability that impairs his ability to learn, read, concentrate, think, communicate, or develop and maintain relationships.  He has been diagnosed with anxiety and ADHD, among other conditions.  Evan's behaviors include talking out of turn in class, using inappropriate language, leaving classes or arriving late to classes that are challenging for him, verbal aggression, and physical aggression to peers.

103.   Although Evan is only 14 years old, he is 6'3" tall and over 200 pounds.  Evan is able to concentrate better and perform better academically when he has opportunities for physical activity throughout the school day, including P.E. class, recreation at recess and lunch, and organized sports.

104.   As a result of Evan's increasing behavior problems, the District transferred him to Focus Point for the ninth grade.

105.   At Focus Point, Evan does not have the opportunity to attend a physical education class.  The campus does not have a field or track on which students can run and play to release extra energy and anxiety.  Students have limited opportunities to engage in play and recreation.  Evan would like to play interscholastic sports, especially basketball, but such activities are not offered at Focus Point.

CLASS ACTION COMPLAINT

106.   Evan has observed other students being restrained and dragged into the the "boring room" at Focus Point, which Evan calls "the padded room."  He is worried about being forced into the "padded room" himself.

107.   In October 2015, Defendants let Evan participate in Focus Point's dual enrollment program.  He began attending Pasadena High School one month after the classes had begun.  He spent mornings at Pasadena High School and afternoons at Focus Point.  His mid-day bus trip disrupted his school day.

108.   Pasadena USD did not provide Evan school-based behavioral services at Pasadena High School and, as a result, he was not successful there.  After 10 weeks, the District ended Evan's dual enrollment and sent him back full-time to Focus Point.

109.   Placement at Focus Point has not been effective in improving Evan's behavior in school.  To the contrary, it has eroded his self-esteem and exacerbated his disability-related behaviors.  Evan wants to return to Pasadena High School including because he feels stigmatized at Focus Point.

110.   With school-based behavioral services, Evan could be educated in a Pasadena USD neighborhood school.

**D.     The Plaintiff Class**

111.   These named Plaintiffs are not alone in their experiences in Pasadena USD and at Focus Point.  Their experiences are endured by the scores of students with a behavior-related disability in the proposed Plaintiff class.  These students suffer the same injuries and require the same relief as the named Plaintiffs.

112.   The proposed class consists of:  "All Pasadena USD students who, now or in the future, are placed at Focus Point or are at serious risk of being placed at Focus Point."  A student is at "serious risk" of being placed at Focus Point if the student (a) is being considered for placement at Focus Point, or (b) has been recently transitioned from Focus Point to a neighborhood school and is having behavior problems at school.

CLASS ACTION COMPLAINT

113.   Defendants have failed to reasonably modify Pasadena USD's programs and services to provide the named Plaintiffs and the Plaintiff class with the school-based behavioral services they need to enjoy an equal education and to be educated in Pasadena USD neighborhood schools.

**COUNT I**
**VIOLATION OF**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12132**

114.   Plaintiffs re-allege the allegations in all preceding paragraphs as though fully set forth herein.

115.   Named Plaintiffs and members of the Plaintiff class are individuals with a disability within the meaning of the ADA.  Their disabilities substantially limit one or more major life activities, including learning, reading, concentrating, thinking, communicating, or developing and maintaining relationships.

116.   As school-age children who live in the District, they are qualified to participate in Defendants' educational programs and services.  42 U.S.C. § 12131(2).

117.   Defendant Pasadena USD is a public entity within the meaning of the ADA.  Defendant MacDonald is an official responsible for running this public entity and supervising its operations. 42 U.S.C. § 12131(1).

118.   Through the acts and omissions described above, Defendants are violating the ADA, 42 U.S.C. § 12132, by:

        a.     Denying named Plaintiffs and the Plaintiff class an opportunity to participate in and benefit from educational services that is equal to that afforded other students;

        b.     Denying named Plaintiffs and the Plaintiff class educational services that are as effective in affording equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that provided other students;

24

CLASS ACTION COMPLAINT

c.   Denying named Plaintiffs and the Plaintiff class the opportunity to receive educational programs and services in the most integrated setting appropriate to their needs;

d.   Failing to reasonably modify Pasadena USD's programs and services as needed to avoid discrimination against named Plaintiffs and the Plaintiff class; and

e.   Utilizing methods of administration that have the effect of defeating or substantially impairing the accomplishment of the objectives of Defendants' educational programs with respect to named Plaintiffs and the Plaintiff class.

119.   Granting relief to Plaintiffs would not fundamentally alter Defendants' programs, services, and activities.

120.   The acts and omissions of Defendants have caused and will continue to cause named Plaintiffs and the Plaintiff class to suffer irreparable harm, and they have no adequate remedy at law.

121.   Under the ADA, Plaintiffs are entitled to attorneys' fees and costs as appropriate and permitted by law, pursuant to 42 U.S.C. § 12205.

**COUNT II
VIOLATION OF
CALIFORNIA GOVERNMENT CODE § 11135**

122.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

123.   Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of . . . disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

25

124. Pasadena USD is a public agency that receives financial assistance from the State of California.

125. Through their acts and omissions described herein, Defendants are violating California Government Code § 11135 by unlawfully denying Plaintiffs and the Plaintiff class the benefits of, and unlawfully subjecting them to discrimination under, Defendants' educational programs and activities.

126. Defendants' actions have caused and will continue to cause named Plaintiffs and the Plaintiff class to suffer irreparable harm, and they have no adequate remedy at law. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

127. Plaintiffs and Class Members are also entitled to reasonable attorneys' fees and costs in filing this action.

**COUNT III
VIOLATION OF DISABLED PERSONS ACT,
CALIFORNIA CIVIL CODE § 54 ET SEQ.**

128. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

129. Through the acts and omissions described herein, Defendants are violating California Civil Code § 54, which provides that "[i]ndividuals with disabilities or medical conditions have the same rights as the general public to the full and free use of . . . public facilities."

130. Under California Civil Code § 54(c), a violation of the ADA also constitutes a violation of California Civil Code §§ 54 *et seq.*

131. Plaintiffs and Class Members are persons with disabilities within the meaning of California Civil Code § 54(b)(1).

132. Pasadena USD provides public facilities, within the meaning of California Civil Code §§ 54 *et seq.*

CLASS ACTION COMPLAINT

133. By the acts and omissions described herein, Defendants are violating California Civil Code § 54.

134. Plaintiffs and the Plaintiff Class are entitled to recover reasonable attorneys' fees and costs in an action to enforce California Civil Code §§ 54.3(a), 55.

135. Defendants' actions have caused and will continue to cause named Plaintiffs and the Plaintiff class to suffer irreparable harm, and they have no adequate remedy at law. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive reliefs are appropriate remedies.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

A. Order that Plaintiffs may maintain this action as a class action pursuant to Rule 23(b) (2) of the Federal Rules of Civil Procedure.

B. Order and declare that Defendants are violating the rights of the named Plaintiffs and the Plaintiff class under the ADA, 42 U.S.C. §§ 12101, *et seq.*, California Government Code § 11135, and California Civil Code §§ 54 *et seq.*

C. Preliminarily and permanently enjoin Defendants, their successors in office, agents, employees and assigns, and all persons acting in concert with them to provide named Plaintiffs and the Plaintiff class with the school-based behavioral services they need to enjoy an equal education and to receive educational programs and services in the most integrated setting, as required by Title II of the ADA.

D. Award Plaintiffs' attorneys' fees and costs as appropriate and permitted by law, including pursuant to 42 U.S.C. § 12205.

E. Any other relief as this Court finds just and proper.

CLASS ACTION COMPLAINT

la-1310699

1

Dated:  February 11, 2016                          MORRISON & FOERSTER LLP

2

3                                                                              By:  /s/ Robert S. Stern
                                                                                      Robert S. Stern

4                                                                          ***Attorneys for Plaintiffs Sam Doe,***
                                                                          ***Deborah Doe, Tanya Doe, Eric***

5                                                                          ***Doe, Walter Doe, and Evan Doe***

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28

CLASS ACTION COMPLAINT