UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SAM DOE by and through his *guardian ad litem* L.R., DEBORAH DOE by and through her *guardian ad litem* S.H, TANYA DOE by and through her *guardian ad litem* F.H., ERIC DOE by and through his *guardian ad litem* G.B., WALTER DOE by and through his *guardian ad litem* M.F., EVAN DOE by and through his *guardian ad litem* C.M.; and on behalf of themselves and other similarly situated students,<br><br>Plaintiffs,<br><br>v.<br><br>PASADENA UNIFIED SCHOOL DISTRICT and BRIAN MCDONALD in his official capacity as Superintendent of Pasadena Unified School District,<br><br>Defendants. | Case No. 2:16-CV-00984-GJS<br><br>**CLASS ACTION**<br><br>[~~PROPOSED~~] ORDER OF DISMISSAL AND RETAINING JURISDICTION<br><br>Judge: Hon. Magistrate Standish<br>Complaint: Filed February 16, 2016 |

1  The Court has read and considered the parties joint request for dismissal under Rule 41(a)(2), the settlement agreement and the Court's Order Approving Minor's Compromise. Docket ## 145-2 and 146). The Court finds that dismissal of the action with prejudice is proper under the following terms:

(1) The District Court shall retain jurisdiction to enforce the Parties' Settlement Agreement, including without limitation disputes over Defendants' compliance with the terms thereof, compliance with and implementation of the Strategic Plan and any and all timelines applicable to executing the Settlement Agreement.

(2) The Settlement Agreement set forth below is incorporated into the order to retain the Court's jurisdiction to enforce the terms therein. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 380-81 (1994).

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter referred to as the "Agreement") is made and entered into, by and between the PASADENA UNIFIED SCHOOL DISTRICT and BRIAN MCDONALD ("DISTRICT or DEFENDANTS") and SAM DOE by and through his guardian ad litem L.R., DEBORAH DOE by and through her guardian ad litem S.H., TANYA DOE by and through her guardian ad litem F.H., ERIC DOE by and through his guardian ad litem G.B., WALTER DOE by and through his guardian ad litem M.F., and EVAN DOE by and through his guardian ad litem C.M., ("PLAINTIFFS") (hereinafter collectively referred to as "Parties").

I.

## GENERAL RECITALS

This Agreement is made for the following purposes and with reference to the following facts:

**1.1 ACTION**

There is now pending in the United States District Court, Central District of California, Case No. 2:16-cv-00984-VAP (GJSx) entitled SAM DOE by and through his guardian ad litem L.R., DEBORAH DOE by and through her guardian ad litem S.H., TANYA DOE by and through her guardian ad litem F.H., ERIC DOE by and through his guardian ad litem G.B., WALTER DOE by and through his guardian ad litem M.F., EVAN DOE by and through his guardian ad litem C.M.; and on behalf of themselves and other similarly situated students v. Pasadena Unified School District and Brian McDonald in his official capacity as Superintendent of Pasadena Unified School District (hereinafter referred to as the "Action").

**1.2 PURPOSE**

The purpose of this Agreement is to resolve the claims in this litigation and to improve services for special education students with behavior-related disabilities in Pasadena Unified School District ("PUSD") consistent with the recommendation of the Neutral Expert as specified in Section II below.

By and through this Agreement the Parties hereby settle and compromise all disputes and controversies, claims and causes of action that were raised, or could have been raised, by the Parties in the Action including, the Individuals with Disabilities Education Act ("IDEA"), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Unruh Civil Rights Act, California Civil Code Section 51 ("Unruh Act"), California Government Code § 11135, and 20 U.S.C. § 1415 et seq up to the date of execution of this Agreement. This Agreement shall not in any way be construed as an admission by any party that it has acted wrongfully with respect to the other party or any other related person or entity, or that any party has any rights whatsoever against any other party.

No Other Actions. The Plaintiffs covenant and represent that they have not filed any complaints or charges or lawsuits against the District with any governmental

agency or court, except this ACTION, and that the Plaintiffs will not do so at any time during the monitoring period specified in Section 2.1(h) with respect to the matters released under this Agreement.

Subject to the adherence to the terms of this Agreement, and upon receipt of the monetary component of the settlement referenced above, Plaintiffs will dismiss this ACTION with prejudice and will not seek costs or fees through the Court other than those that are already specified by this Agreement.  As further consideration for this Agreement, it is the express and understood intent, purpose, desire, and agreement of the Parties that the Plaintiffs, and the District shall, and hereby do, release and forever discharge each other, as well as their respective agents, officers, employees, attorneys, and representatives, of and from any and all claims, demands, actions or causes of action of every kind and character, known or unknown, which they may now have in connection with, relating to, or arising out of any and all existing disputes between the Parties through the date of execution of this Agreement.

The Plaintiffs and the District specifically waives the provisions of Section 1542 of the California Civil Code, which provides as follows:

**Section 1542. Certain claims not affected by general release. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Parties expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California against the District, to the fullest extent that they may waive all such rights and benefits pertaining to the matters released in this Agreement. In connection with this waiver, the Parties acknowledge that they are aware that they may in the future discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, regarding the matters released in this Agreement. Nevertheless, it is the Parties intention, through this Agreement, and

with the advice of counsel, to fully, finally and forever settle and release all such matters. This release shall be and remain in effect as a full and complete release of all claims that they may now have in connection with, relating to, or arising out of any and all existing disputes between the Parties notwithstanding the discovery or existence of any such additional or different claims or facts relative to those matters.

# II.
# OBLIGATIONS

## 2.1 PROGRAM EVALUATION, STRATEGIC PLAN, TIMELINE FOR ACTIVITIES, INDICATORS, BENCHMARKS, AND IMPLEMENTATION

(a) The Parties agree that Lauren Katzman of Urban Collaborative ("Neutral Expert") and her designated review team will conduct a district-wide evaluation of the District's programs, services, and supports pertaining to the provision of services to students with behavior-related disabilities, within six months after the Neutral Expert confirms her availability to begin the assessment. The Neutral Expert will conduct an evaluation to review the District's programs, policies and practices to determine the District's capacity, resources, and needs in the following areas, as set forth in detail in the attached Appendix:

1. Inclusion of special education students with behavior and mental health disabilities;
2. Transition of students from segregated settings, including but not limited to Focus Point Academy, to general education campuses;
3. Early response to behaviors and academic support to prevent behavior problems;
4. Support for multi-system involved youth;
5. Inclusion of named plaintiffs; and
6. Inclusion of Focus Point Academy students.

(b) PUSD shall bear all costs to retain the Neutral Expert for the evaluation and monitoring required by this Agreement. PUSD shall provide Plaintiffs' Counsel with a copy of the proposed contract with the Neutral Expert, and shall allow Plaintiffs' Counsel to comment and provide any requested modifications prior to executing the proposed contract.

(c) To the extent it deems necessary, PUSD shall seek a protective order to permit the Neutral Expert to review individual student records as specified below.

(d) The Parties agree that the Neutral Expert will be permitted access to District information as follows:

1. Interviews and focus groups with District staff, school staff, students, parents, educational rights holders, guardians, Plaintiffs' counsel, and Defendants' counsel;
2. Observations at existing and proposed inclusion sites, including but not limited to Focus Point Academy, Franklin Elementary School, McKinley Middle School, and Pasadena High School;
3. District policies, guidelines, processes and procedures;
4. Student-level district data, including classification rates, placement in educational environments, and educational outcomes;
5. Individual student files, including evaluation data, Individualized Education Program (IEP) plans, functional behavioral assessments, behavior intervention plans, discipline records, attendance records;
6. Information on potential community partners.

(e) The Parties agree that the review by the Neutral Expert will include analyses of:

1. Assessment of staffing, training, and the academic and behavioral

interventions needed to include special education students with behavior-related disabilities in general education classrooms on comprehensive campuses within the District;

2. Review and assessment of the District's current and proposed inclusion sites;

3. Assessment of protocol for transitioning students from self-contained settings for students with behavior-related disabilities to general education classrooms, including staff training, and the academic and behavioral interventions at general education campuses;

4. Assessment of programs and staff training on early response to behaviors, comprehensive behavior assessments, implementation of positive behavior intervention plans, implementation of trauma-informed care and approaches to promoting learning while addressing behaviors;

5. Assessment of the District's caregiver engagement process and capacity for building community partnerships that would help the District meet the needs of students with disabilities including foster youth;

6. Consultation with the District's staff regarding the placements of each named Plaintiff while in PUSD, and how the ultimate recommendations of the Neutral Expert could support inclusion of these students and can support inclusion of similarly situated students in general education classrooms at the District's comprehensive campuses; and

7. Review of student records to determine an appropriate transition protocol for all current Focus Point Academy students and all other students transitioning from separate schools to general education

classrooms in comprehensive campuses

(f) The Parties agree that the Neutral Expert will participate in monthly telephone conferences with the Parties and their counsel to report on progress while the Expert is conducting the evaluation. The Parties will answer questions and provide feedback to ensure that the program evaluation is addressing concerns raised in the Plaintiffs' complaint. At the conclusion of the evaluation period, the Neutral Expert will complete a Program Evaluation Report that will include a description of all evaluation tools (e.g., documents reviewed, interviews, site visits, and observations), baseline data, findings, and recommendations, including:

1. The identification of systemic best practices and inconsistencies related to the provision of special education services to students with IEPs;
2. Approaches to improving the educational infrastructure for special education students with behavior-related disabilities, including evaluation procedures, service delivery, programmatic structures, and placement determinations;
3. A proposed Strategic Plan and Activity Timeline to implement the recommendations; and
4. Proposed indicators and improvement benchmarks regarding special education students with behavior-related disabilities, including:
   - Increases in inclusive education (time spent by students with behavior-related disabilities in classrooms with students without disabilities);
   - Improved academic outcomes:
   - Improved Social Emotional Learning, including decreases in rates of suspension, expulsion, restraint, and seclusion/time-outs.

(g) Within thirty (30) days after the Parties receive the completed Program Evaluation Report, the Parties will meet and confer in writing to determine which recommendations and elements of the Strategic Plan the Parties agree that the District will implement. If the Parties cannot reach an agreement on the recommendations and elements of the Strategic Plan that will be implemented by the District, the Parties will resolve their disagreement pursuant to the dispute resolution procedure in Section 2.4 (ii) and (iii). Following resolution of any disputes, District agrees promptly to adopt and begin implementation of the Strategic Plan and Activity Timeline, as agreed upon or determined by the arbitrator

(h) The Neutral Expert will monitor implementation of the Strategic Plan, Timelines and Performance Metrics for a period of five (5) years. The Expert will have access to the information identified in paragraph 2.1(b) above during this time and will work with the District in the first year to develop a data collection system for the monitoring period. The District agrees to provide the Neutral Expert and Plaintiffs' counsel with quarterly written reports, including updates on agreed upon data elements, and with other information requested by the Neutral Expert. The District will conduct remote meetings with Neutral Expert, District staff and counsel for the Parties on a quarterly basis to review evidence of implementation. The Neutral Expert will conduct in-person meetings with District staff and counsel for the Parties to review and report on implementation on an annual basis. Plaintiffs' counsel may make no more than two (2) site visits per school year during the five (5) years to PUSD schools, with at least seven (7) days notice to Defendants and their counsel. The Court shall retain jurisdiction of this matter during the full course of the monitoring period.

(i) The Strategic Plan, as agreed upon between the Parties, or subject to resolution of disputes as outlined in section 2.4, including all timelines and

005510.0033125347
486.1

11

Case No. 2:16-CV-00984-GJS
[Proposed] Order

benchmarks, shall be updated annually and amended as Defendants deem necessary for effective implementation, subject to the approval of the Neutral Expert and provided that notice of such change is provided to Plaintiffs in writing. In the event Plaintiffs disagree with Defendants' proposed update or amendment, Plaintiffs shall notify Defendants in writing of their disagreement and may pursue dispute resolution pursuant to Section 2.4 below.

(j) The Strategic Plan, including all timelines and benchmarks, and all amendments or updates thereto, shall be incorporated into, and become enforceable as part of the Settlement Agreement.

## 2.2 PLAINTIFFS' AWARD AND ATTORNEY'S FEES

(a) The Defendants will pay to the Plaintiffs' counsel, on behalf of Plaintiffs, the lump sum of $8,500 each in full, final and complete settlement of claims by the Plaintiffs for compensatory damages. No Plaintiff will be entitled to any other payment for monetary damages as compensation for the claims that were alleged or could have been alleged in the Action. Defendants agree to pay the agreed upon lump sum amount to Plaintiffs, via their counsel subject to the Court's approval and the approval of an Order for Minor's Compromise.

(b) The Defendants will pay to the Plaintiffs' counsel, Disability Rights California, Mental Health Advocacy Services, Judge David L Bazelon Center for Mental Health Law and Morrison and Foerster LLP, a lump sum of $425,000 in full, final and complete settlement of all claims by the Plaintiffs or their attorneys for attorneys' fees and litigation costs up to and including the date of this agreement. It will be the sole obligation of the Plaintiffs and their counsel to allocate and apportion that sum between attorneys' fees and litigation costs as they see fit.

(c) The payments specified in Sections 2.2. (b) of the Agreement will be due and owing to the Plaintiffs and their counsel in five equal payments over a period of five years from the date upon which the Agreement is formally approved by the

Court. The first payment shall be due 30 days after the Agreement is approved and subsequent payments hall be due in one year intervals. The schedule of payments shall include payment of interest at a rate pursuant to Government Code section 970.1(c).[1]

(d)   Payment drafts specified in 2.2.(a) and (b) will be made payable to Disability Rights California and will be delivered to 1831 K Street, Sacramento, California 95811-4114 for appropriate distribution. Plaintiffs' Counsel will notify Defendants' counsel when payment has been received within a reasonable time of receipt.

**2.3 DISMISSAL AND ENFORCEMENT**

(a)   Within ten (10) days of execution of the Agreement, the Parties agree to file a joint request for an order of dismissal that includes, but is not limited to, the following provisions:

i) The District Court shall retain jurisdiction to enforce the Parties' Settlement Agreement, including without limitation disputes over Defendants' compliance with the terms thereof, compliance with and implementation of the Strategic Plan and any and all timelines applicable to executing the Settlement Agreement;

ii) The Settlement Agreement shall be incorporated into the dismissal order.

**2.4 DISPUTE RESOLUTION**

(a)   Plaintiffs' counsel shall have standing to enforce the terms of this Agreement during the term of the Agreement.

---

[1] Government Code section 970.1(c) provides that "unless another statute provides a different interest rate, interest on a tax or fee judgment against a local public entity shall accrue at a rate equal to the weekly average one year constant maturity United States Treasury yield at the time of the judgment plus 2 percent, but shall not exceed 7 percent per annum."

(b) All disputes concerning the interpretation, implementation, monitoring of and compliance with this Agreement and with the development, implementation, modification, monitoring of and compliance with the Strategic Plan shall be resolved as follows:

i. <u>Notification in writing</u>. Any party's dispute concerning this agreement shall be brought in writing to the attention of the other Party. The other party may provide a written response to the issues raised in the notice within fourteen (14) calendar days of receipt of the notice.

ii. <u>Meet and Confer.</u> Unless otherwise agreed to by the parties with respect to any particular dispute, the parties agree to meet and confer in good faith within thirty (30) calendar days after a dispute is raised in writing by one of the parties to discuss and attempt to resolve the dispute. In the event that a party fails to meet and confer within thirty (30) days after the dispute is raised, the Party raising the dispute may immediately submit the matter to the Magistrate Judge for resolution.

iii. <u>Submission to Magistrate Judge for arbitration.</u> Failing resolution by the Parties, the Parties may submit the dispute to binding arbitration before the Magistrate Judge assigned to this matter.

iv. <u>Attorneys' Fees regarding Dispute Resolution</u>. Plaintiffs may seek an order imposing attorney's fees for the time expended in redressing the District's non-compliance with the Strategic Plan and Activity Timelines. In the event that a Party fails to meet and confer in timely manner, the aggrieved party may seek attorneys' fees for the time expended in seeking resolution of the dispute. The grant or denial of a request for attorney's fees is committed to the discretion of the Magistrate Judge.

# APPENDIX

The program evaluation agreed to in paragraph 2.1(a) of the attached Agreement will include review of the District's programs, policies and practices to determine the District's capacity, resources and needs in the following areas:

1. **Inclusion of students with behavior and mental health disabilities:** assessment of staffing, training, and the academic and behavioral interventions needed to include students with behavior-related disabilities in regular classrooms on general education campuses; and review and assessment of District's current inclusion sites at Cleveland Elementary School and McKinley Middle School, and proposed inclusion sites at Pasadena High School and a pre-K program.

2. **Transition of students from segregated settings, including but not limited to Focus Point Academy, to general education campuses:** assessment of PUSD's protocol for transitioning students from Focus Point Academy or other segregated settings to regular classrooms in PUSD's general education campuses, including staff training, and the academic and behavioral interventions at general education campuses.

3. **Early response to behaviors and academic support to prevent behavior:** assessment of programs and staff training on early response to behaviors, comprehensive behavior assessments, implementation of positive behavior intervention plans, implementation of trauma-informed care and approaches to promoting learning while addressing behaviors.

4. **Support for multi-system involved youth:** assessment of District's caregiver engagement process and capacity for building community partnerships that would help the District meet the needs of students with disabilities including foster youth.

5. **Inclusion of Named Plaintiffs:** consultation with District staff regarding the current placements of each named Plaintiff, and the academic and behavioral supports needed to include these students in regular classrooms at Defendants' general education campuses.

6. **Inclusion of Focus Point Academy Students:** review of student records to determine an appropriate transition plan for all current Focus Point Academy students to regular classrooms in general education campuses.

## III.

## NO ADMISSION OF LIABILITY

Parties agree that entering into this Agreement is in no way an admission of liability or wrongdoing by any party.

## IV.

## CONFIDENTIALITY

Parties agree that all discussions, negotiations, and/or documentation shared on executing this Agreement will constitute efforts to compromise claims under Rule 408 of the Federal Rules of Evidence and any comparable state rules of evidence except for this Agreement itself.

## V.

## RULES OF CONSTRUCTION

Each party, through its legal counsel, has participated in the drafting of this Agreement, and any rule of construction to the effect that all vagaries and ambiguities are construed against the party drafting the agreement shall not apply to the interpretation or construction of this Agreement.

**IT IS SO ORDERED.**

DATED: October 31, 2019

_____
GAIL J. STANDISH
UNITED STATES DISTRICT JUDGE